FILED

October 29, 2015

IN COURT OF
WORKERS' COMPENSATION
CLAIMS

TIME 2:02 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **CEDRIC JONES,** | ) | **Docket No.:  2015-06-0332** |
| **Employee,** | ) | |
| **v.** | ) | **State File Number: 18707-2015** |
| **CRENCOR LEASING AND SALES,** | ) | |
| **Employer,** | ) | **Judge Joshua Davis Baker** |
| **And** | ) | |
| **AUTO OWNERS INSURANCE,** | ) | |
| **Carrier.** | ) | |
| | ) | |

## EXPEDITED HEARING ORDER AWARDING
## TEMPORARY DISABILITY BENEFITS

THIS CAUSE  came to be heard before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by the employee, Cedric Jones, pursuant to Tennessee Code Annotated section 50-6-239 (2014).  At issue is whether the employer, Crencor Leasing and Sales (Crencor), terminated Mr. Jones for cause, and whether this termination bars Mr. Jones from collecting temporary disability benefits. As explained below, the Court finds that Crencor terminated Mr. Jones for cause but holds that Crencor must pay him temporary disability benefits as it could not have accommodated his work restrictions.[1]

### History of Claim

Cedric Jones is a thirty-five-year-old resident of Davidson County, Tennessee, who worked as a car detailer for Crencor, an automobile dealership.  His job duties included waxing, cleaning the inside of the cars, cleaning the motors and painting over rust spots.  Mr. Jones testified that he worked five days per week.  A wage statement listed his weekly wage as $341.13.  (Ex. 5.)

In detailing the cars, Mr. Jones used a high-pressure washer and buffer.  He testified that operating these machines required him to use both hands.

---

[1] Additional information regarding the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an Appendix.

On March 9, 2015, Mr. Jones suffered an injury in the course of his employment for Crencor when a ladder fell and struck him in the right shoulder. Mr. Jones testified that he told his supervisor, Mike Nokes, of the incident. Mr. Nokes allegedly told him to go back to work.

About an hour after Mr. Jones talked to Mr. Nokes, he received a call informing him that his daughter became ill at school. Mr. Jones left work to pick up his daughter, and then went to the hospital after leaving his daughter with her grandmother. Mr. Jones notified Mr. Nokes before going to the emergency room.

After Mr. Jones received care at the hospital, Crencor accepted the injury and provided Mr. Jones a panel of physicians. Mr. Jones selected Dr. Matthew Willis as the authorized treating physician.

On March 13, 2015, Dr. Willis diagnosed Mr. Jones with a "contusion with possible non-displaced fracture of the right shoulder." (Ex. 1 at 2.) He recommended an MRI and imposed workplace restrictions that prohibited Mr. Jones from using his right arm and from driving. *Id*. at 2, 47. On March 31, 2014, after reviewing the MRI results, Dr. Willis changed Mr. Jones' diagnosis to a right-shoulder separation and a low-grade rotator-cuff tear. *Id*. at 7, 8. He recommended conservative treatment and continued Mr. Jones' work restrictions for four weeks. *Id*. at 8, 48.

Mr. Jones continued to detail cars after his injury but no longer used the buffer. Other than that, he testified his job duties essentially remained the same. Mr. Jones denied that anyone at Crencor offered him any modified-duty work.

David Carson, Crencor's general manager, stated that Crencor had light-duty work available but did not know Mr. Jones' restrictions. He denied seeing any of the modified-duty work slips completed by Dr. Willis but conceded that Mr. Jones could have submitted them directly to Crencor's comptroller.

Mr. Jones returned to Dr. Willis' office on April 7, 2015. Dr. Willis gave Mr. Jones an injection and released him to return to work under restrictions that prohibited him from "use of the upper extremity except for typing and writing." *Id*. at 14, 49.

That same day, after his visit with Dr. Willis, Mr. Jones went to Crencor to turn in his work excuse—he did not work that day. While at Crencor, Mr. Carson told Mr. Jones he was terminated. Mr. Carson stated that he terminated Mr. Jones for adding time he did not work to his timecard. Specifically, Mr. Carson pointed to Mr. Jones' addition of Saturday work hours to his timecard. Mr. Carson testified he worked every Saturday, except for one, over the last year and a half, and knew that Mr. Jones never worked on

2

Saturday. When Mr. Carson confronted Mr. Jones about this, Mr. Carson claims that Mr. Jones admitted having not worked on Saturday.

Mr. Jones essentially confirmed that Mr. Carson told him he was fired, in part, for submitting extra time on his timecard. Mr. Jones also claimed Mr. Carson additionally said he fired him for missing too much time from work.[2] Mr. Jones testified that Mr. Carson spoke to him and another detailer about submitting false time several weeks before his termination. Mr. Jones denied submitting extra time on his timecard. He stated, however, that he told Mr. Carson on April 7, 2015, "if I made a mistake, wrote some extra hours down on there . . . just take it out of my check."

The timecard for the week ending April 3, 2015, showed that someone struck through the time submitted by Mr. Jones for Monday and Friday of that week, and reduced the time by one hour on each occasion. (Ex. 4.) The timecard bears what appears to be Mr. Carson's signature. *Id*.

Subsequent to his termination, Mr. Jones stated that Mr. Nokes told him Mr. Carson fired him because his detailing work worsened following his injury and because Mr. Jones missed too much time from work to attend therapy appointments. Crencor terminated Mr. Nokes approximately ninety days prior to this Expedited Hearing.

Following his termination, Mr. Jones continued to receive care from Dr. Willis. After failure of conservative care, Dr. Willis performed arthroscopic surgery on Mr. Jones' shoulder on May 11, 2015. (Ex. 1 at 24-25.)

Prior to his surgery, Dr. Willis imposed restrictions that prohibited Mr. Jones from using his upper extremity for anything other than typing and writing. *Id*. at 14, 49. Following the surgery, Dr. Willis issued Mr. Jones several sets of workplace restrictions. On May 15, 2015, Dr. Willis imposed restrictions that prohibited Mr. Willis from lifting more than two pounds, and participating in anything "beyond typical daily activities including eating, brushing of teeth, typing, or writing were discussed with the patient." *Id*. at 26, 51. On June 11, 2015, Dr. Willis decreased Mr. Jones' lifting restriction to no more than five pounds, and imposed new restrictions that prohibited any use of his right arm, prohibited him from performing overhead work and also prohibited any work that required Mr. Jones to stretch out his injured arm. *Id*. at 52. On September 1, 2015, Dr. Willis released him to return to work without restrictions. *Id*. at 53.

At trial, Mr. Carson stated that he would have accommodated Mr. Jones' restrictions but did not know what they were. When asked about available light-duty work, Mr. Carson described sanitation-type work such as emptying trash cans and

---

[2] In this testimony, Mr. Jones referred to David Carson as "Brian." At the close of his testimony, Mr. Jones clarified that his references to Brian referred to the actions of Mr. Carson.

dusting.

During the period between his termination from Crencor on April 7, 2015, and his release to return to work on September 1, 2015, Mr. Jones worked for a tire delivery/transportation service called Redhot Express. Mr. Jones estimated he earned $1,200 while working for Redhot Express and testified that he earned $150 per week. When asked about his ability to move tires while restricted from using his right arm, Mr. Jones testified that he used only his left arm to move the tires.

Mr. Jones filed a Petition for Benefit Determination seeking temporary disability benefits. (T.R. 3.) The parties did not resolve the disputed issues through mediation, and the Mediation Specialist filed a Dispute Certification Notice. (T.R. 2.) The Court conducted an Expedited Hearing on October 19, 2015. (T.R. 1.)

**Findings of Fact and Conclusions of Law**

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987); *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

Under the Workers' Compensation Law, an injury is accidental "only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(13)(A) (2014). "An injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" Tenn. Code Ann. § 50-6-102(13)(B) (2014).

Here, the proof showed that a ladder fell on Mr. Jones while he worked for Crencor. Dr. Willis diagnosed a shoulder separation and rotator-cuff tear, and causally related these conditions to Mr. Jones' work. Accordingly, the evidence at this time shows that Mr. Jones suffered a compensable injury and is, therefore, eligible for medical

benefits and temporary disability benefits.

Crencor provided Mr. Jones medical benefits, and Dr. Willis released him to return to work without restrictions. Medical benefits, therefore, are not disputed. Concerning temporary disability benefits, the Workers' Compensation Law provides that an employer must provide those benefits until the employee reaches maximum medical improvement, so long as the employee can prove an inability to work due to a compensable injury. *Simpson v. Satterfield,* 564 S.W.2d 953, 955 (Tenn. 1978); s*ee also Gray v. Cullom Mach., Tool and Die, Inc.,* 152 S.W.3d 439, 443 (Tenn. 2004); *Gluck Brothers, Inc. v. Coffey,* 431 S.W.2d 756, 759 (Tenn. 1968). An employee is entitled to receive temporary partial disability benefits, pursuant to Tennessee Code Annotated section 50-6-207(2) (2014), when "the temporary disability is not total." *Stem v. Thompson Servs.,* No. M2010-01566-WC-R3-WC, 2011 Tenn. LEXIS 742, at *27 (Tenn. Workers' Comp. Panel July 26, 2011); *Jewell v. Cobble Construction and Arcus Restoration,* No. 2014-05-0003, 2015 TN Wrk. Comp. App. Bd. LEXIS 1, at *22 (Tenn. Workers' Comp. App. Bd. Jan. 12, 2015). Crencor, however, maintains that Mr. Jones cannot recover temporary disability benefits because Crencor fired him for cause; specifically, submitting false timecards.

An injured employee is not entitled to temporary disability benefits, however, if terminated for cause *and* the employer w a s reasonably capable o f providing modified duty within the restrictions assigned. To be excused from this obligation, the employer must demonstrate that the termination of employment involved a breach of the reasonable expectations of the employer and appears reasonably appropriate. In such cases, the employer is deemed to have made reasonable efforts to accommodate the employee's work restrictions and the Employee's work injury is not the reason why he is not returned to his former job. *See generally Carter v. First Source Furniture Group,* 92 S.W.3d 367, 371-372 (Tenn. 2002) (holding that, "an employer should be permitted to enforce workplace rules without being penalized in a workers' compensation case"); *Ingram v. Heads Up Cutting Ctr.*, No. M2012-00464-WC-R3-WC, 2013 Tenn. LEXIS 338, at *20 (Tenn. Workers' Comp. Panel Apr. 10, 2013); *see also Durham v. Cracker Barrel Old Country Store, Inc.*, No. E2008-00708-WC-R3-WC, 2009 LEXIS 3, at *9 (Tenn. Workers' Comp. Panel Oct. 22, 2008).[3]

Mr. Jones claims Crencor, through Mr. Carson, fired him because he missed work to receive medical treatment for his injury and because he performed lower quality work

---

[3] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." McCord v. Advantage Human Resourcing, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

due to his injured condition. Mr. Jones maintains that the stated reason for his termination is a pretext. The Court concludes Mr. Jones bears the burden of proof on this issue, and finds, for the reasons stated below, that he failed to carry that burden.

Mr. Carson testified he fired Mr. Jones for submitting hours on his timecard that he did not work. While Crencor did not provide any proof showing an established rule or policy that prohibited false time-reporting, the Court finds that submission of an incorrect timecard resulting in receipt of pay for hours not actually worked qualifies as misconduct under ordinary workplace rules and/or expectations.

Regarding Crencor's motivation, the Court finds that Mr. Carson fired Mr. Jones for submitting a false timecard, not for missing work as Mr. Jones maintains. Mr. Carson testified that he fired Mr. Jones because he added time that he had not worked to his timecard and received money for it; an action Mr. Carson equated to stealing. For his part, Mr. Jones denied falsifying his time card but admitted telling Mr. Carson to take the money out of his check if he made a mistake in reporting his hours. The central issue in determining motivation is the mindset of the acting party. With the exception of the statements allegedly made by Mr. Nokes and Mr. Carson, nothing in the proof showed any other motivation for Crencor's decision. Further, Mr. Carson specifically denied telling Mr. Jones that he fired him for missing work. Additionally, Mr. Nokes, who did not testify, had been terminated from Crencor, and the Court places less weight on his alleged statements.

As stated above, Mr. Jones bears the burden of proving his termination was pretextual. The Court finds that he failed to carry his burden of proof at this time. Despite his failure to prove that the Crencor fired him for an improper reason, the Court finds that Crencor could not have accommodated his work restrictions and, therefore, must pay him temporary partial disability (TPD) benefits.

When asked about light-duty work available at Crencor, Mr. Carson listed sanitation duties such as emptying trash cans and dusting. The Court finds that Mr. Jones could not have performed these duties under the restrictions imposed by Dr. Willis. These restrictions included no use of the upper extremity except for typing and writing from April 7 through May 14, 2015 (Ex. 1 at 14, 49); lifting no more than two pounds, and participating in no activities "beyond typical daily activities including eating, brushing of teeth, typing" from May 15 through June 10, 2015 (Ex. 1 at 26, 51); and lifting no more than five pounds, no use of his right arm, no overhead work and no work that required Mr. Jones to stretch out his injured arm from June 11 through September 1, 2015 (Ex. 1 at 52). The Court finds that Mr. Jones could not have performed any of the light duty described by Mr. Carson under these restrictions. Accordingly, Crencor must pay Mr. Jones TTD benefits for the period from April 7 through September 1, 2015.

The wage statement provided that Mr. Jones earned an average weekly wage of $341.13 per week. (Ex. 5.) The wage statement also shows that he worked for Crencor only four weeks before his date of injury, and, during two of those weeks, he worked only three full days. *Id.* For that reason, Mr. Jones urges that his average weekly wage be calculated by looking at the wages of another similarly-situated employee. The Court, however, has no evidence of the wages paid to a similarly-situated employee. For that reason, the Court finds that Mr. Jones compensation rate should be set based on the average weekly wage of $341.13 at this time. This results in a compensation rate of $227.43. If Mr. Jones wishes to have this amount adjusted, he may request that the Court do so in a future proceeding.

Crencor owes Mr. Jones accrued temporary partial disability benefits from April 7 through September 1, 2015, a period of twenty-one weeks and one day. However, the amount must be reduced by taking into account Mr. Jones' earnings while working for Redhot Express.

Mr. Jones testified that Redhot Express paid him $150 per week, and that he earned a total of $1,200. Dividing Mr. Jones weekly wage at Redhot Express by the total amount he earned shows he worked there for eight weeks. The Court will, therefore, reduce Mr. Jones average weekly wage by $150 for eight weeks of the twenty-one week and one-day temporary disability period. Including the deduction $150 results in a wage rate of $191.13, and a compensation rate of $127.43. Payment at this compensation rate for eight weeks is $1,019.44 of TPD benefits.

For the remaining thirteen weeks and one day, Crencor shall pay Mr. Jones benefits at his regular compensation rate of $227.43. This results in $2,989.18 in TPD benefits. Accordingly, the Court find that Crencor shall pay Mr. Jones at total of $4,008.62 ($1,019.44 + $2,989.18) in TPD benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Crencor shall pay Mr. Jones $4,008.62 in accrued temporary partial disability benefits for the period from April 7 through September 1, 2015.

2. This matter is set for a Scheduling Hearing on December 8, 2015, at 10:30 a.m. (CST).

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the**

7

**seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the  29th day of October, 2015.**

_____
**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

Initial Hearing:

A Scheduling Hearing has been set with **Judge Joshua Davis Baker, Court of Workers' Compensation Claims. You must call 615-741-2113 or toll free at 855-874-0474 to participate in the Initial Hearing.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **<u>filing fee in the amount of $75.00.</u>** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or

8

other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within three business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within three business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

Exhibits:

1. Medical Records of Cedric Jones
2. Affidavit of Cedric Jones
3. Affidavit of Ashley Norman
4. Copies of Cedric Jones' timecards
5. Wage Statement
6. Wage Payment Records

Technical Record:[4]

1. Request for Expedited Hearing filed September 4, 2015
2. Dispute Certification Notice filed July 9, 2015
3. Petition for Benefit Determination filed May 28, 2015
4. Mr. Jones' Position Statement
5. Crencor's Position Statement
6. First Report of Injury

---

[4] The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments to them as allegations unless established by the evidence.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the  29th  day of October, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Kim Thompson | | | X | kthompson@tlgpllc.com |
| Michael Haynie | | | X | mhaynie@manierherod.com |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**